Joseph T. ROZECKI, Jr., et al., Plaintiffs-Appellants,

v.

Charles W. GAUGHAN, Superintendent, et al., Defendants-Appellees.

No. 71–1378.

United States Court of Appeals, First Circuit.

Argued April 3, 1972.

Decided April 26, 1972.

Robert A. Bell, Boston, Mass., for plaintiffs-appellants.

Bernard Manning, Asst. Atty. Gen., with whom Robert H. Quinn, Atty. Gen., and John J. Irwin, Jr., Asst. Atty. Gen., Chief, Criminal Div., were on brief, for defendants-appellees.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

On September 30, 1971, describing themselves as "patients" in the Treatment Center of, and confined in, the Massachusetts Correctional Institution at Bridgewater, hereafter Bridgewater, and as representatives of a class of persons there confined, either for observation, or by civil commitments pursuant to Mass. G.L. c. 123A, plaintiffs filed a complaint in the district court against Charles W. Gaughan, Superintendent of Bridgewater, and Harry L. Kozol, M.D., Director of Treatment.[1] Jurisdiction was laid under 28 U.S.C. § 1343(3) and equitable rights were claimed under the Eighth Amendment. 42 U.S.C. § 1983. The factual basis of the claim was "grossly inadequate heating," allegedly leading to physical ills and to severe personal discomfort. The sole relief sought was an order directed to the defendants to supply adequate heat.

Defendants filed a motion to dismiss for failure to state a claim upon which relief could be granted. F.R.Civ.P. 12(b)(6). On October 22 this motion came on for hearing before a magistrate, at which point defendants, apparently without objection, presented witnesses and testimony was taken. No statement was made that the hearing was on the merits, or that the testimony

was being taken as a transposition into a motion for summary judgment. F.R. Civ.P. 12(b), 56. After the hearing plaintiffs submitted affidavits supporting a comprehensive claim of frequent, if not continuous, totally insufficient heat in many portions of the buildings during cold weather, alternated by marked excessive heat in other portions, apparently due to lack of controls over the distribution of the steam. The defendants filed a memorandum of counsel asserting additional "facts," but not under oath as required by Rule 56, bearing on their good faith and their attempts, so far unsuccessful, to improve the conditions. Asserting, as they do here, that the inadequacy in the heating was unintentional, they contended that it could not constitute "cruel and unusual punishment" since, as the plaintiffs were patients rather than "inmates" (albeit involuntarily confined), the question of punishment was not involved.

In a memorandum dated November 9 the magistrate found that the Bridgewater heating system was old and incapable of regulation, or, at least, adequate regulation, and concluded as follows.

"It is clear that the authorities at Bridgewater are not purposely depriving the patients of heat at the Treatment Center; nor does it appear that there is any negligence on the part of the authorities in providing heat to the patients. This being so, it does not appear that the patients have stated a claim upon which relief can be granted under the Civil Rights Act. Granted, if the authorities at the Treatment Center purposely refused to provide heat for the patients at the Treatment Center it would be cruel and unusual punishment cognizable under the Eighth Amendment of the Constitution of the United States. Hence, the patients would be entitled to relief under the Civil Rights Act. However, such is not the case at the

1. By amendment plaintiffs asked to add additional defendants, viz., the Commissioner of Corrections, and the Commissioner of

Mental Health. The action was dismissed without this motion being acted upon.

Treatment Center. Here the authorities are doing all they can with what they have."

He ordered that the complaint be dismissed. The district court noted its approval at the bottom, and the memorandum and order of dismissal was docketed on November 11.[2]

Defendants make the claim that the complaint was dismissed "on the merits." In the light of the rapidity with which plaintiffs found themselves out of court it is hard to be sure what the court intended. We do not pause to consider the irregularities, however, because it is apparent that, whatever was done, the court's conception of substantive law was basically at fault. It cannot be because plaintiffs are confined prior to trial, as distinguished from imprisoned after conviction, that the cruelty, if any, of their treatment is not to be noticed. Distinctions, if any are conceivable, should be the other way. Nor can it be any excuse for continuous, as distinguished from temporary accidental, inhumane treatment, if there were such, that the representatives of the state were doing the best they could.

Whether personal good faith of the individual defendants could constitute a defense to monetary damages is not before us. We can only say that it cannot be thought a defense against equitable relief. Plaintiffs do not have to show that the authorities are "purposely depriving the patients of heat." As the court said in Holt v. Sarver, E.D.Ark., 1970, 309 F.Supp. 362, 385, aff'd 8 Cir., 442 F.2d 304, "The obligation of the Respondents to eliminate existing unconstitutionalities does not depend upon what the Legislature may do, or upon what the Governor may do, or, indeed, upon what Respondents may actually be able to accomplish." The result, not the specific intent, is what matters; the concern is with the "natural consequences" of action or inaction. Monroe v. Pape, 1961, 365 U.S. 167, 187, 81 S.Ct. 473, 5 L.Ed.2d 492; Pierson v. Ray, 1967, 386 U.S. 547, 556, 87 S.Ct. 1213, 18 L.Ed.2d 288. "Humane considerations and constitutional requirements are not, in this day, to be measured or limited by dollar considerations." Jackson v. Bishop, 8 Cir., 1968, 404 F.2d 571, 580 (Blackmun, J.).

Reversed.

---

2. We do not know whether the district court had the document in its possession between November 9 and November 11, but we do know that it approved the magistrate's findings without notice, heard no argument, and could not even have had possession of a transcript on which the magistrate's findings were based, as the transcript was not prepared until later.